## SELLECK *vs.* TWESDALL.

### *Attachment.*

In the same affidavit for attachment, plaintiff may set forth *notes due*— *notes that are not due*—and that he is *indorser on certain other notes of defendant, which are not yet due,* without subjecting himself to the consequences of a misjoinder of actions; the acts of 1799—1816 and 1820, being in effect but one act, so far as this point is concerned.

If plaintiff in his affidavit use the words *"has absconded"* they are sufficient under the act of

THE affidavit upon which this writ was granted, sets forth that the plaintiff holds certain notes of the defendant now due, and demandable; certain others not yet due, but running to maturity; and that he is the indorser on certain other notes of the defendant not yet due; and that the defendant *has absconded* so that the ordinary process of law cannot be served upon him.

To this attachment, two exceptions are taken. First. That there is a misjoinder of actions; the remedy by attachment for debts due, for those to become due, and for securities or liabilities having been given by separate acts require separate process.

Second. That the facts set forth in the affidavit will not sustain the writ under either of the acts giving remedy by attachment.

*By the Court.* As to personal actions, the whole doctrine of the misjoinder of actions depends entirely upon the difference of the original process and the fines to be paid on taking out the original, and on the form of the action rather than the subject matter of it. Thus actions for a tort—arising *ex de-*

*licto* cannot be joined with those arising *ex contractu,* because in the first case the original was a capias and the fine paid was in proportion to the offence, in the second the original was a summons, and the fine paid was in proportion to the sum demanded. By the law of Georgia all actions commence by petition and process and no fine whatever being required on suing out an original, it may be well doubted whether the doctrine of misjoinder of actions obtain at all in this State, upon the legal maxim *"Cessante ratione cessat ipsa lex."* The court will not however rashly disregard a doctrine, and the forms of pleading which have been adopted and sanctioned by all the Judges who have presided in the courts of the State since the passage of the Judiciary act of 1799, as far as their decisions are known. Supposing then the common law on this subject of force, how does it affect the present case. The remedy by attachment is altogether a creature of the statute, and is allowed only in cases of debt. It has a two fold object, first to supply the want of personal service where the ordinary process of law cannot be served; and secondly to secure the property of the debtor to satisfy the judgment which may be rendered against him. The statute expressly declares that the proceedings subsequent to the serving of the attachment shall be the same as on original process against the body of the defendant where there is default of appearance. Could the plaintiff have joined in the same action, if commenced by petition and process, the different demands set out in this affidavit? All the demands are founded on notes which may be well joined; and the acts of 1816, and 1820, give to creditors and securities the right of commencing suit by attachment though the debt be not due and demandable at the time of suing out the attachment; and the latter act the right of proceeding to judgment before the debt shall become due. But it is argued that the acts of 1799, 1816, and 1820, are separate acts giving remedies in separate cases, and that therefore the attachments should have been separate. This argument is not sustained by the acts themselves. The act of 1816 is " in addition to and amendatory of the act of 1799." That of 1820, is in addition to and amendatory of the several acts to regulate attachments. They are therefore considered as in effect but one act so far as the remedy is concerned; the two latter but enlarging the remedy given by the first. The greatest difficulty is as to the right of an *indorser* to the remedy given to *securities* by the act of 1820. The court considers the act remedial in its nature, and requiring a liberal construction, and that the strictness required by the act of 1799, and by that of 1820, as in addition to it is applicable to the mode of prosecuting suits under it, and not to the extent of the remedy. It is true that the word security is above used, but that is a word very general in its signification, and may well, upon a liberal construction, be made to include not only

joint obligors and promissors, but also all others bound in any other manner for the payment of the debt ; and such surety are indorsers, whose liability, though dependent on demand and notice, yet is such as to bring them within the spirit and meaning of the act. The first exception is therefore over-ruled.

The second exception is to the sufficiency of the facts disclosed in the affidavit to sustain the attachment under either of the acts to regulate attachments. That of 1799 points out five distinct cases in which the writ may be granted, and prescribes the mode of proceeding, and declares that all attachments issued and returned in any other manner shall be null and void. One of the cases is where the debtor *absconds*, so that the ordinary process of law cannot be served on him. It is contended that the affidavit changing the debtor to have absconded is not in pursuance of the act, and that the attachment must be declared null. It is true, the debtor must be shown to be actually absconding at the time application is made for the writ, but this is sufficiently shown by the words used in the affidavit " has absconded" which, though referring to a time past includes also the time present, and will sustain the attachment under the act 1799. It remains to be seen whether the act of absconding is such as to authorize the attachment according to the acts of 1816, and 1820. By the act of 1799, an extraordinary remedy is given in cases where the ordinary process of law cannot be served. By the two acts amendatory thereof, a remedy is given where none existed before, and the cases in which it is allowed are limited in the act of 1816, to where " the debtor or debtors is or are removing or about to remove without the limits of this State," and in the act of 1820, where " the principal debtor or debtors is or are removing, or is or are about to remove, or have removed without the limits of this State or any county." Here it is clear that no inability to serve the ordinary process need be shown, for no ordinary process could issue ; and the writ can as well be granted in the presence of debtor or principal as in his absence ; but it must be shown that he is actually removing, or is about to remove, or has removed. Neither of these things are shown by the affidavit. The plaintiff has not therefore entitled himself to the benefit of either of the acts of 1816 or 1820, and can only be permitted to proceed with his writ for the recovery of those demands which were at the time of suing out the writ due and recoverable under act of 1799.